UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

KEVIN WANGERIN,

Petitioner,

v.

WARDEN O'DELL, and
JON E. LITSCHER,

Respondents.

Civil File No. 00-2765 (MJD/ESS)

**REPORT AND RECOMMENDATION**

KEVIN WANGERIN, Fox Lake Correctional Institute, Box 147, Fox Lake, WI 53933, Petitioner, pro se.

Michael D. Oeser, Wisconsin Department of Justice, 123 W. Washington Avenue, PO Box 7857, Madison, WI, 53707, for Respondents.

The above-entitled matter is before the undersigned Magistrate Judge of District Court on the petition of Kevin Wangerin for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [Docket No. 6]. Respondents have filed a motion and supporting memorandum asking the Court to dismiss the petition, [Docket Nos. 10 and 11], and Petitioner filed a memorandum in support of his application for habeas corpus relief [Docket No. 7]. The matter has been referred to the undersigned for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons set forth below, the Court recommends that the petition for writ of habeas corpus be dismissed with prejudice.

## I. BACKGROUND

Petitioner was charged with five counts of sexual assault pursuant to Wisconsin Statutes, § 948.02(2). On August 10, 1994, Petitioner appeared in the Waukesha County Circuit Court in Wisconsin, and entered a plea of *nolo contendere* to all five counts. On two counts, he was

FILED AUG 21 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD______
DEPUTY CLERK______

sentenced to consecutive terms of 4 and 6 years; on the remaining three counts, he was sentenced to concurrent terms of 10 years probation running consecutive to his imprisonment [Docket No. 6]. Petitioner began serving his prison sentence in facilities that were located in Wisconsin and operated by the Wisconsin Department of Corrections. In January 2000, however, Wisconsin prison officials decided to transfer Petitioner to the Prairie Correctional Facility, ("PCF"), in Appleton, Minnesota.

Petitioner is one of many Wisconsin prison inmates who have been transferred to out-of-state prison facilities in recent months. Because of overcrowding in its own facilities, the Wisconsin Department of Corrections has made contractual arrangements with institutions in other states to provide housing for Wisconsin inmates. PCF, a private prison operated by the Corrections Corporation of America, ("CCA"), is one of the facilities that has agreed to accept and house Wisconsin prisoners.

On December 26, 2000, Petitioner attempted to file an application for habeas corpus relief [Docket No. 1]. On January 11, 2001, the Petition was returned to the Petition for re-filing in compliance with Local Rule 9.3. Petitioner claims that the Warden at PCF, Timothy O'Dell, cannot legally detain him and should be ordered to release him immediately.[1] The petition lists six grounds in support of Petitioner's demand for immediate release from custody:

(1) Petitioner was transferred from Wisconsin to Minnesota without statutory authority and without his consent;

---

[1]On July 2, 2001, Petitioner's mother filed a notice that the Petitioner is now being held at the Fox Lake Correctional Institute in Fox Lake, Wisconsin [Docket 14]. Because jurisdiction over a habeas corpus petition attaches at the time of filing, the Court retains jurisdiction over this matter even though Petitioner is in Wisconsin. See Jones v. Jerrison, 20 F.3d 849 (8th Cir. 1994); Francis v. Rison, 894 F.2d 353 (9th Cir. 1990).

(2) Petitioner's transfer to PCF constitutes an "extradition" to Minnesota, which was accomplished without due process and in violation of Article IV, Section 2, Clause 2 of the Constitution;[2]

(3) Petitioner has been deprived of due process and equal protection because he was not afforded the opportunity for a hearing before a judge and with legal representation;

(4) Petitioner's transfer to PCF constituted a "seizure," in violation of the Fourth Amendment;

(5) Petitioner's transfer and subsequent restraint violated the Federal Kidnapping Act (18 U.S.C. § 1201);

(6) Petitioner's continued restraint by illegal means violates the U.S. Constitution;

For the reasons discussed below, the Court concludes that Petitioner is not entitled to habeas corpus relief on any of the grounds listed in his petition. It will therefore be recommended that this action be dismissed with prejudice.

## II. DISCUSSION

### A. Form Of Action

Respondents initially argue that habeas corpus relief is not available to Petitioner in this matter because he is not challenging the validity of his underlying Wisconsin state court conviction and/or sentence, nor is he is seeking relief for any quantum changes in the level of his confinement. Respondents contend that Petitioner is challenging only the conditions of his confinement, which

---

[2] Article IV, Section 2, clause 2 of the Constitution states that:

> "A Person charged in any State with Treason, Felony, or other Crime who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."

cannot be done in an action brought under the federal habeas corpus statutes, (28 U.S.C. §§ 2241-2255).

It is certainly true that a civil rights action, rather than a habeas corpus action, is the prescribed federal remedy for a prisoner who is challenging the conditions of his confinement rather than the fact or duration of his confinement. As explained by our Court of Appeals,

> "[c]laims challenging conditions of confinement or the method by which a sentence is being carried out may be asserted through a [42 U.S.C.] § 1983 cause of action. However, a state prisoner challenging the fact or duration of a sentence of imprisonment and seeking an earlier or speedier release has a federal remedy through habeas corpus and cannot bring a claim under § 1983."

Williams v. Hopkins, 130 F.3d 333, 336 (8th Cir.), cert. denied, 522 U.S. 1010 (1997) (emphasis added). Where the proper form of action -- habeas or civil rights -- is debatable, "[i]t is the substance of the relief sought which counts." Kruger v. Erickson, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam) (emphasis added).

In this case, while Petitioner may be complaining about the conditions of his confinement, he is seeking no relief other than immediate release from custody. He has not requested money damages to compensate him for his allegedly wrongful transfer to PCF, nor has he requested injunctive or declaratory relief that would cause him to be returned to Wisconsin. Instead, he is challenging the very fact of his confinement, and he is seeking an expedited release from custody. The federal remedy for such a request is a writ of habeas corpus. Id. ("[t]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody"). Given the type of relief that Petitioner is seeking here, the Court concludes that he has properly presented his claims by way of a habeas corpus petition, rather than a civil rights complaint.

B. Exhaustion of State Court Remedies.

Respondents further contend that if Petitioner's claims can properly be brought in a habeas

corpus petition, they must be summarily dismissed because he has not exhausted his available state court remedies. See 28 U.S.C. § 2254(b)and (c); O'Sullivan v. Boerckel, 119 S.Ct. 1728, 1731 (1999); Rose v. Lundy, 455 U.S. 509 (1982). Assuming there are state court remedies available to Petitioner, (as contended by Respondents[3]), the Court will not recommend that the instant petition be dismissed for non-exhaustion, for two reasons.

First, the Court is not fully satisfied that the exhaustion requirement is applicable here. Because Petitioner is not challenging the validity of any state court judgment, it may be most appropriate to construe his petition as one brought under 28 U.S.C. § 2241, rather than § 2254. See Montez v. McKinna, 208 F.3d 862, 864-65 (10th Cir. 2000) (describing § 2254 as the proper statutory basis for challenging the validity a state prisoner's conviction or sentence, and § 2241 as the proper statutory basis for challenging the execution of a sentence). If the instant petition is construed to be a § 2241 petition, then exhaustion of state court remedies may not be required, because § 2241 does not include an exhaustion clause comparable to § 2254(b).[4]

---

[3] For the most part, the remedies cited by Respondents are administrative remedies, rather than remedies available in the courts of the states. (See "Respondent's Brief In Support Of His Motion To Dismiss," [Docket No. 11], at pp. 9-10.) Respondents suggest that Petitioner could ask the state courts to conduct "certiorari review" of an adverse administrative agency decision, but it does not appear that such a remedy would be available to Petitioner at this time, because there is no formal administrative ruling for him to challenge. Thus, the Court questions whether Petitioner actually does have any state court remedies presently available to him.

[4] In Montez, the Court held that "[a] habeas petitioner is generally required to exhaust state remedies whether his action is brought under § 2241 or § 2254." 208 F.3d at 866. Although Montez cites three cases in support of this conclusion, none of the cited cases actually holds that exhaustion is necessary in § 2241 cases brought by state prison inmates. Two of the cases cited in Montez involved § 2254 petitions, rather than § 2241 petitions, and the third case involved a federal prisoner who was required to exhaust his federal administrative remedies – not his state court remedies.

Several courts have held that state pre-trial detainees must exhaust their state court remedies before seeking relief under § 2241. See Hirsch v. Smitley, 66 F.Supp.2d 985, 986 (E.D.Wis. 1999); Blanck v. Waukesha County, 48 F.Supp.2d 859, 860 (E.D.Wis. 1999); Moore v. DeYoung, 515 F.2d

Furthermore, even if there are state court remedies available to Petitioner, the instant petition can still be properly adjudicated without exhaustion, pursuant to 28 U.S.C. § 2254(b)(2). That statute allows the Court to sidestep the exhaustion issue, if Petitioner's claims will be rejected on the merits in any event.[5] Because the Court does indeed conclude that Petitioner's claims must be denied on the merits, (for reasons discussed immediately below), this case need not be, and will not be, dismissed for non-exhaustion.

C. The Merits of Petitioner's Claims

**(i) Absence of statutory authority**

Petitioner argues that his transfer from Wisconsin to Minnesota was invalid because the Department of Correction in Wisconsin does not have the authority to transfer him. Wisconsin Statutes § 301.21 provides that the Department of corrections may enter into contracts with other

---

437, 442 (3rd Cir. 1975); Neville v. Cavanagh, 611 F.2d 673, 675 (7th Cir. 1979), cert. denied, 446 U.S. 908 (1980). Those decisions, however, are based on abstention principles that would seem to apply only when a related state court case is still pending at the time when federal habeas corpus relief is sought under § 2241. Where a prisoner's § 2241 claims are wholly independent of any pending state court proceedings, (which appears to be the case here), exhaustion presumably would not be mandated by abstention principles.

Thus, the Court has found no legal authority, (aside from Montez), indicating that a state prisoner must exhaust available state court remedies before filing a § 2241 petition challenging only the manner in which his sentence is being executed.

[5] 28 U.S.C. § 2254(b)(2) provides that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the states." Section 2241 does not expressly include a provision similar to § 2254(b)(2) -- which is not surprising, given that § 2241 does not expressly include an exhaustion requirement. Nevertheless, if exhaustion of state court remedies is required under § 2241, the Court believes that a petition brought under that statute can properly be considered and denied on the merits without exhaustion, (provided no federal abstention principles are implicated), just as permitted by § 2254(b)(2). See Montez, 208 F.3d at 866 (applying § 2254(b)(2) in a case construed to be a § 2241 action).

states for the transfer and confinement of its prisoners. Petitioner concedes that Wisconsin had the authority to enter into a contract with another state for the transfer and confinement of its prisoners; he argues, however, that Wisconsin did not have the authority to act on the contract. In short, Petitioner's argument is that Wisconsin had the power to make promises, but not to keep them.

The Wisconsin Court of Appeals, in construing Wisconsin Statutes, § 301.21, has addressed this very argument. The Court concluded that "the language of the statute plainly evinces a legislative intent to authorize the department to both enter into contracts with entities operating correctional facilities in other states, and to then transfer Wisconsin inmates for incarceration at those facilities pursuant to those contracts." Evers v. Sullivan, 237 Wis.2d 759, 766, 615 N.W.2d 680, 683 (Wis. Ct. App. 2000).[6]

Petitioner also alleges that his transfer was invalid because he never consented to it. Petitioner's contention that his consent is required for a transfer is without foundation. Petitioner's argument relies on Wisconsin Statutes, § 303.18(3).[7] Petitioner's argument ignores the plain language of the statute.

Petitioner's arguments in favor of his first ground for relief are without merit.

**(ii) Alleged failure to comply with extradition laws**

Petitioner argues that his current confinement is illegal because his transfer to PCF constitutes an extradition from Wisconsin to Minnesota; he alleges that his extradition was

---

[6]Contrary to Petitioner's assertion that this Court is not bound by the Evers decision, the Eighth Circuit has ruled that the Court of Appeals is bound to apply law of state as it is able to discern the law from rulings of state's courts. See Jackson v. Anchor Packing, Co., 994 F.2d 1295 (8th Cir. 1993).

[7]Wisconsin Statutes, § 302.18(3) provides that "a prisoner may request the department to transfer him or her to a prison in another state under s. 302.25."

accomplished in violation of his "extradition rights," which are guaranteed by Article IV of the United States Constitution. Specifically, he contends that Minnesota never issued a valid warrant for his arrest.

This argument is clearly without merit, because it is based on the wholly erroneous premise that Petitioner was "extradited" to Minnesota. Extradition is the process by which one state seeks custody of a person found in another state in order to prosecute or punish the person for a crime.[8] Petitioner was not "extradited" to Minnesota, because the State of Minnesota did not ask Wisconsin to send him here to face criminal charges, to fulfill a judgment entered by a Minnesota court, or for any other reason. Because Petitioner was not extradited to Minnesota, he was not entitled to the procedural protections of federal extradition laws before being transferred to PCF. Thus, the Court finds Petitioner's second ground for relief to be clearly without merit.

**(iii) Alleged violation of due process**

Petitioner's third ground for relief is quite similar to his second ground for relief. Not only does it rely on Article IV of the United States Constitution, it also relies on state law.[9] Unlike the

---

[8] Black's Law Dictionary defines "extradition" as "[t]he surrender by one state or country to another of an individual accused or convicted of an offense outside its own territory and within the territorial jurisdiction of the other, which, being competent to try and punish him, demands the surrender."

[9] Petitioner's argument erroneously refers to Wisconsin Statutes, § 973.03(10), a statute that does not exist. However, Wisconsin Statutes, § 97<u>6</u>.03(10), part of the Uniform Criminal Extradition Act, reads, "Rights of accused; application for habeas corpus. No person arrested upon such warrant may be delivered over to the agent whom the executive authority demanding the person shall have appointed to receive the person unless the person shall first be taken forthwith before a judge of a court of record in this state, who shall inform the person of the demand made for the person's surrender and of the crime with which the person is charged, and that the person has the right to demand and procure legal counsel; and if the prisoner or the prisoner's counsel shall state that the prisoner desires to test the legality of the prisoner's arrest, the judge of such court of record shall fix a reasonable time to be allowed the prisoner within which to commence an action for habeas corpus. When such action is commenced, notice thereof, and of the time and place of hearing

previous argument, which alleged that Petitioner's "extradition rights" were violated, Petitioner's third argument alleges that he was extradited without due process. Petitioner's argument relies on Cuyler v. Adams. Cuyler states that a prisoner who is incarcerated in a jurisdiction that has adopted the Uniform Criminal Extradition Act is entitled to the procedural protections of the Act before being extradited. Cuyler v. Adams, 449 U.S. 433, 450, 101 S.Ct. 703, 712 (1981). Like his second argument, Petitioner's third argument relies on the erroneous conclusion that his transfer from Wisconsin to Minnesota constitutes an extradition. Unlike the prisoner in Cuyler, the Petitioner did not face criminal charges in the state to which he was transferred. Cuyler was extradited and, thus, was entitled to the protections of the Uniform Criminal Extradition Act; Petitioner was not extradited and, thus, was not entitled to such protection.

In response to Petitioner's argument, the Respondents rely on Meachum v. Fano. In Meachum, the Supreme Court reasoned that, "given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." Meachum v. Fano, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538 (1976). The Supreme Court concluded that the "Due Process Clause [does not] in and of itself protect a duly convicted against transfer from one institution to another within the state prison system." Id. at 225, at 2538.

Considering Petitioner's valid conviction, Wisconsin's law regarding the transfer and custody of its prisoners, the Supreme Court's holding in Meachum, and the fact that Petitioner's transfer did

---

thereon, shall be given to the prosecuting officer of the county in which the arrest is made and in which the accused is in custody, and to the said agent of the demanding state."

not constitute an extradition, the Court concludes that Petitioner's third argument is without merit.

**(iv) Fourth Amendment claim**

In his fourth ground for relief, Petitioner contends that he "was unlawfully taken, against his will and without statutory authority and/or a valid warrant, and transported to a jurisdiction which posed no legal right over his person, ... in direct violation of the Fourth Amendment to the United States Constitution."[10] In support of this position he refers to the Supreme Court's statement that "a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime." Wolff v. McDonnell, 418 U.S. 539, 555, 94 S.Ct. 2963, 2974 (1974).

Except for the references to Wolff and the Fourth Amendment, this argument appears to be an amalgam of Petitioner's earlier arguments. The Court has already concluded that Petitioner's transfer was lawful, his consent was not required, statutory authority was present, a warrant was unnecessary, and that Minnesota was his proper custodian pursuant to Wisconsin law. The Court sees no need to reiterate its arguments with respect to these points.

The Petitioner does not explain how the Fourth Amendment applies to these facts. The Supreme Court has stated that a prisoner's Fourth Amendment rights are quite limited as a result of incarceration because a prisoner has a limited expectation of privacy in jail. See Lanza v. State of New York, 370 U.S. 139, 143-144, 82 S.Ct. 1218, 1220-1221 (1962); see also United States v. Surridge, 687 F.2d 250, 256 (8th Cir. 1982). Petitioner has been duly convicted of a crime and sentenced to a term of imprisonment by the State of Wisconsin. Pursuant to a lawful agreement, he has been transferred to Minnesota's custody while he serves his sentence. In light of Lanza, nothing

---

[10]The Fourth Amendment states that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

about these facts suggest a violation of the Fourth Amendment. In addition, Petitioner's reliance on Wolff is misplaced. While Wolff acknowledges that a prisoner is not wholly stripped of constitutional protections when he is imprisoned for a crime, it gives no indication that a prisoner retains a Fourth Amendment right against seizure. Wolff acknowledged that prisoners retain substantial religious freedom under the First and Fourteenth Amendments, a right of access to the courts, rights against invidious discrimination based on race pursuant to the Equal Protection Clause of the Fourteenth Amendment, and due process protections against deprivations of life, liberty, and property. Wolff, 418 U.S. at 555-556, 94 S.Ct. at 2974.

In analyzing the Fourth Amendment rights of prisoners, the Supreme Court has considered its positions in Lanza and Wolff. The Supreme Court held that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." Hudson v. Palmer, 468 U.S. 517, 526, 104 S.Ct. 3194, 3200 (1984). The Court went on to state that "a right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." Id., at 527-528, at 3201.

There is no legal precedent to support the holding that a prisoner retains a Fourth Amendment right not to be transferred to a prison facility in another state pursuant to a valid agreement between the states for the transfer and custody of prisoners. Because Hudson specifically acknowledges that the Fourth Amendment rights of prisoners are limited, the Court is unpersuaded by the Petitioner's reliance on Wolff.

**(v) Violation of the Federal Kidnapping Act**

Petitioner next argues that his detention violates the Federal Kidnapping Act. See 18 U.S.C. § 1201. Petitioner's analysis fails to acknowledge that this provision only prohibits "unlawfully"

holding someone against his will and transporting him across state lines. While Petitioner's general theory of the case was that his transfer was unlawful, the Court has already determined that the Respondents acted lawfully. The Court's decision on Petitioner's earlier arguments makes it impossible for Petitioner to prevail on this argument.

**(vi) Alleged Constitutional violation**

Petitioner alleges that his "continued restraint by the respondents, by illegal means, violates the constitution. Petitioner asserts that the respondents and the state of Wisconsin have conceded jurisdiction over his conviction and sentence because of the illegal transgressions" revealed in his Memorandum.

In support of this argument, Petitioner cites six cases. See Butchalter v. People of the State of New York, 319 U.S. 427, 63 S.Ct. 1129 (1943); United States v. Toscanino, 500 F.2d 267, 275 (2nd Cir. 1975); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407 (1961); Shields v. Beto, 370 F.2d 1003 (5th Cir. 1967); Piper v. Estelle, 485 F.2d 245 (5th Cir. 1973); Johnson v. Williford, 682 F.2d 868 (9th Cir. 1982).[11]

Butchalter, Toscanino, and Wong Sun are distinguishable from this case in that they all involved inappropriate conduct by the government in obtaining a conviction. Piper is unhelpful to the Petitioner because, in affirming a denial of a habeas corpus petition, Piper distinguished itself from Shields v. Beto. However, Shields is distinguishable from this case. In Shields, the Defendant had begun serving a 40-year sentence in Texas when he was extradited to Louisiana to serve a 10-year sentence. Texas did not file a detainer with Louisiana. The Defendant was released and

---

[11]Petitioner's citation for Johnson v. Williford was incorrect. His citation identifies the case of United States v. Kelly, 683 F.2d 871 (5th Cir. 1982). Having reviewed both cases, the Court is convinced that Petitioner meant to cite Johnson and has provided the correct citation for it.

remained at large for 12 years. Then he served two years in Tennessee. Twenty-eight years after leaving Texas to serve his sentence in Louisiana, he was returned to Texas by Tennessee. The Court of Appeals concluded that Texas' failure to pursue the Defendant and maintain custody over him constituted a waiver of jurisdiction and a commutation of his sentence.

Johnson is also distinguishable from this case. Johnson was sentenced to 10 years in prison without parole. Nonetheless, he was erroneously placed on parole and successfully reintegrated himself with society. Fifteen months later, the government realized its mistake and attempted to revoke his parole. In granting Johnson's habeas corpus petition, the Court estopped the government and concluded that allowing the government to revoke Johnson's parole would be fundamentally unfair.

Petitioner's argument rests on the erroneous assumption that Wisconsin did not have the authority to transfer him to Minnesota. Having rejected that assumption, the Court can hardly find that Wisconsin's "illegal" actions constituted a waiver of jurisdiction over the Defendant. Furthermore, because Wisconsin has maintained custody over the Petitioner, either directly or through its agents, the cases cited by the Petitioner are distinguishable.

## III. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Respondents' motion to dismiss Petitioner's application for habeas corpus relief, (Docket No. 10), be GRANTED; and

2. This action be DISMISSED WITH PREJUDICE.

Dated: August 20, 2001

E. S. SWEARINGEN
United States Magistrate Judge

Under D.Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties within ten days, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.